Administrator, U.S. Environmental Protection Agency in his official capacity. Mr. Gormley for the appellants, Mr. Sandberg for the appellate. Good morning. Good morning. Neil Gormley for the appellants. May it please the court. This is a challenge to an EPA directive that prohibits scientists to receive EPA research grants from serving on EPA's scientific advisory committees. A directive to whom? It's a directive really to EPA staff, but it imposes a requirement, Judge Ginsburg. By its plain terms, it imposes a requirement, and it directs that that requirement shall be applied, again, using mandatory language in the administration of EPA's scientific advisory committees. It's the administrator telling the staff what the policy is he wants them to follow. You always characterize it as a regulation, but it seems to me it's just an internal directive within the executive branch telling people what to do, to the extent consistent with law. Well, Judge Ginsburg, it imposes a mandatory requirement, and although it is directed to EPA staff, EPA staff understood that they were obligated to impose this new requirement. I understand that, just as OMB is obligated to accept draft regulations from other agencies under an executive branch. So how would you distinguish a regulation? I'm sorry, Judge Rogers? Well, Judge Ginsburg has posed to you this is just a policy directive to staff. How would you distinguish a regulation? A regulation imposes obligations. On? Finish your sentence. Well, in this case... On staff to impose on the regulated public. Correct? That's exactly right. All right. So what did EPA do procedurally here? Well, EPA procedurally adopted a directive that is binding on EPA staff, and EPA then applied that requirement as binding against the scientists on EPA's advisory committees. We know that these scientists were ejected from the committees for noncompliance with the requirement articulated in the directive. And the reason why that's unlawful, I'd like to address three reasons why that's unlawful. The directive also says we want to have more people from state, local, and tribal governments. Right? That's correct. Anything unlawful about that? We're not challenging the other provisions of the directive, Judge Ginsburg. I understand that, but it's a zero sum, right? The committees can be only so a bit large. They want to have more people from the public sector. They're going to have fewer from other sectors, academic and industry. It's certainly right that EPA has discretion in the management of its committees, but what EPA doesn't have discretion to do is to adopt an ethical requirement that's inconsistent with the regulations established for the entire executive branch by OGE. So when they want to have geographical diversity, I guess you'd say that's not an ethical regulation? That's correct, Judge Ginsburg. And this is why? It's an ethical regulation because it prohibits these individuals from holding a financial interest on the grounds that it's a conflict of interest. And EPA doesn't dispute that this directive was motivated by the administrator's view that these agency grants create a conflict of interest. And that's contrary to the OGE regulations, which are binding on EPA. And not only are the OGE regulations... What does it say that is inconsistent with the OGE regulations? The OGE regulations specifically address the receipt, the financial interests of advisory committee members. I understand that. And they deal with what an agency can do by way of regulation to vary and not vary from that or work with OGE to issue a regulation, right? That's correct. This isn't a regulation. I'm sorry? This isn't a regulation. This is... If this isn't a regulation, then you're through, right? If it's not a regulation. No, Judge Ginsburg. The review would still be available of whether this was arbitrary and capricious. And there are standards that this Court can apply in determining whether this directive was lawful and also whether it was arbitrary and capricious. Both the OGE regulations and the regulations adopted by the General Services Administration under FACA direct EPA to apply the OGE regulations in the management of their committees. And in addition, there's other law to apply here. Wait a minute. To apply OGE regulations in the management of the committee? That's right. And what regulation have they not applied? They've not applied the standards of conduct that specifically provide that this financial interest is not a disqualifying conflict. OGE has addressed the receipt of agency grants by advisory committee members and determined that they should not be disqualifying. But you concede, at least I think you do, that the EPA is free as long as it goes through proper procedures, that's your theory, to impose either higher or lower standards, correct? Certainly, Judge Tatel, EPA does have authority, limited authority, under the ethics regulations to adopt supplemental ethics rules. But it has to do that under the regulations, the supplemental ethics regulations. Wait, Judge. So when you say in the brief that you say EPA, quote, must prohibit what ethics rules prohibit and allow what they allow. That's what you say in your brief. But that's not right, is it? Because EPA, as you concede in the procedural part of your brief, EPA can change, can impose its own rules as long as it, according to your theory, does it in coordination with the ethics office, right? This would be a very different case if EPA had gone through the supplemental agency regulation process. No, I'm just asking you about this sentence in your brief, right? You say it's contrary to law because EPA must prohibit what the ethics office rules prohibit and allow what they allow. And I'm asking you whether that's, in fact, correct. That's correct because, that's correct, Judge Tatel. Why? Because the OGE regulations provide that agency regulations must be consistent with OGE's regulations. Right, but that, but it could still issue different but yet consistent regulations, right? I mean, for example, suppose it issued a standard which slightly refined what it meant by grants or what it meant by not participate. Suppose, for example, it felt it needed to identify a little more precisely the difference between issues on which a university scientist with an EPA grant had to recuse herself from and those she didn't. No, it wanted to refine that rule. It could do that, right? It could do that using the supplemental ethics process. Using the procedure, right. That's right. Okay, so, okay, all right. So then, so then I understood your argument actually to be focused on primarily on your view that the agency here never acknowledged its change in position and never explained why it was adopting a rule that allowed, that excluded from advisory committees individuals who could have served prior to this, right? Isn't that, that's your argument, right? We have, we have several arbitrary and capricious arguments, Judge Tatel, and that's one of them and I'd like to address that. EPA never acknowledged that it was reversing its own prior policy, which was the opposite to the policy adopted in the directive. And EPA also never even considered the expert judgment of the Office of Government Ethics that these grants should not be disqualifying. And on both of those bases, EPA's directive is arbitrary and capricious. When you say the administrator didn't acknowledge that this was a change in policy, is that what you're saying? That's correct. It says he wants to improve and strengthen things. That the, previously this was not a disqualifying credential, how could that not be obviously acknowledging that he's doing something, adding new criteria? You're right, Judge Ginsburg, that EPA argues that it's sufficient to simply announce the new criteria, but that's not sufficient under this Court's precedent. If they had said henceforth, would that make a difference? I mean, it's clear that they're doing something new, right? This Court's precedents require an agency that's reversing course to acknowledge the conflict with the prior policy, not to gloss over it. And they require agencies to rationally address the conflict. So then your point is, well, it didn't say why. What's wrong with the current policy? That's exactly right. Why hasn't it worked? That's exactly right. EPA failed to rationally address why the prior policy, which is in accordance with OGE's expert view, wasn't working, why it should change. And EPA also failed to explain why it was reversing its prior considered view, that it was important that these grantees be eligible to serve on EPA's advisory committees. Because of their expertise in the particular scientific issues that EPA has to deal with. That had been EPA's consistent prior position. And EPA continues to agree that it's important that its scientific committees have sufficient expertise. But EPA never addressed its prior view that excluding these grantees would be a bad idea, precisely because they have this expertise. I have two questions for you. One is on your procedural argument, that is that they adopted this without going through the procedures for issuing supplemental regulations or supplemental standards. Yes. What do you do with the provision of the regulation that says the violation of this part or supplemental regulations does not create any right or benefit in force of the law? The agency says that means we can't review this. Right. And that's wrong for two reasons, Judge Stadel. The first is that OGE does not have authority to preclude judicial review by regulation. This Court's cases are clear, including Balbal and Brossimer and De Jesus Ramirez, are clear that in order to preclude review of a violation of law as this is, an agency must, there must be clear indicia of congressional intent to preclude review. And there is no indicia of congressional intent to empower OGE to preclude review under the EPA here. The other reason why EPA... Why couldn't you just read that? Wouldn't another response be that what this is doing is prohibiting, say, for example, what this would do, this would prohibit, for example, an individual scientist excluded from a FACA, from an advisory committee, from suing. But there's nothing in it that says it precludes. Setting aside your point that an agency couldn't itself preclude an EPA challenge, it just doesn't talk about EPA challenges here. They're not suing for their seats. They're arguing that the directive is arbitrary and capricious. That's exactly right, Judge Stadel. Well, no, is that, then, I mean, if that's, do you know of any authority for that? Has this, has any court interpreted this to suggest that it means what I say? The U.S. District Court in D.C. in the Laurillard opinion addressed this issue, but, and that decision was reversed on other grounds, on standing grounds. But they did say that this is limited to sort of individual cases brought by individuals. They did. They essentially adopted your reading, Judge Stadel. And we think that's the correct reading, particularly in light of the strong presumption. And we didn't reverse that? We reversed it for other reasons? Is that what you said? On standing grounds, Judge Stadel. Oh, I see. Yeah, on a special reason. So here's my second question. The amicus brief that the states filed, it says that academic representation fell 40 percent as a result of this directive, and that industry representation tripled. Is that reflected in the record of the case? Are there any, what's in the record? We're here on a motion to dismiss, Judge Stadel. Yeah. So the actual impact on these committees is not really fleshed out in the record. Okay, but what about allegations? Because motion to dismiss, we have to accept allegations as true. Right. Are there any allegations in either the complaint or the declarations which support this? Not as to the exact number, but certainly as to the impact, that this is going to have a serious impact on the operations of these advisory committees, that it's going to exclude a large number of individuals, and that it's going to skew the membership of these committees, and that EPA failed to consider any of those impacts, and therefore failed to rationally address its own prior policy and the consequences of the new policy that it was adopting. Was there any prior document supporting the prior policy? Yes, Judge Ginsburg. The peer review handbook that EPA, that is referenced in our complaint, expressly recites EPA's prior policy, that the receipt of agency grants was not a conflict of interest. Does it give a reason? Yes. In addition to referencing the OGE standard, which EPA previously followed, it also says that the competitive peer review process by which EPA's grants are awarded means that the risk of a conflict of interest, that's a separate process, and EPA recognized that the risk of a conflict of interest, that the advisory committees would have no ability to corrupt that process. The peer review process by which EPA grants are awarded is a separate process. So does the peer review handbook, is that directed towards simply the award of grants? No. It also addresses whether EPA's advisory committees should welcome the participation of EPA grantees, and it says that they should. I'd like to reserve the remainder of my time for rebuttal. Thank you. Good morning, and may it please the Court. Good morning. Jeff Sandberg for the United States. The district court correctly concluded that there is no legal basis to set aside EPA's policy here. As my opposing colleague acknowledged, the EPA has broad discretion in choosing who it wants as its advisors, and so my opposing colleague is focused on the assertion that the federal ethics regime provides a law to apply that constrains the agency's discretion here. And that's a fairly basic misconception. Federal ethics rules are a code of conduct that apply to people who have come on board to federal service, and they specify which particular matters a person can or can't participate in. Federal ethics laws don't tell agencies who they can or can't hire. The district court in this case got it most. Well, that's not the issue here. They're not. I mean, in fact, reading your brief, one would think that what the plaintiffs are charging here, they're arguing about the selection of individuals to serve on committees. That's the way your brief reads. But that isn't there. In fact, they abandoned that argument, as best I can tell. Their argument is that this directive conflicts with binding ethics regulations. Right. That's their argument. It has nothing to do with picking or not picking particular persons. That's right. That's their argument. My understanding of their argument, and I hope they would agree, is that EPA, when it is choosing members, cannot have a policy of excluding people because they are in receipt of an EPA grant, because they believe that that is a violation of federal ethics law. And what I'm saying is federal ethics law does not speak to what qualifications a person has when an agency is considering them for service. Judge Cato, you asked about the supplemental regulation process before. Before you get to that, let me just ask you. The regulation says, the GSA regulation says the head of each agency that establishes or utilizes an advisory committee, quote, must assure that the interests of advisory committees are reviewed for conformance with applicable conflict of interest statutes. Why isn't that the law to apply? I mean, you still may be right that it complies with that, but isn't that the law to comply, to reapply? I think that's absolutely right. If we were here on an allegation that EPA is allowing someone to serve on an advisory committee that has a conflict of interest, this Court could absolutely say that is law to apply, this person can't serve with a conflict of interest. But we're not talking here about, you know, individual people in particular matters' conflict of interest. We're talking about EPA's discretion to choose who it wants for its committees. No, I understand that. But under the ethics rules, tell me if this is not the right way to read them. The ethics rules say special employees can serve on advisory committees so long as they don't make any judgments about their individual grants, correct? That's right. Now EPA is saying no special employees can serve at all. But not as a matter of Federal ethics law. Your Honor, you were talking before about the supplemental agency regulation. You know, if EPA had gone to OGE here saying we want to promulgate this as a supplemental agency regulation, it's quite... Do you have the directive there in front of you? I do, yes. Okay. It says non-governmental and non-tribal members in direct receipt of EPA grants can create the appearance. I'm reading from your own directive. That's right. That can create the appearance or reality of a conflict of interest. No, that's not what it says. It says may create interference with their ability to independently serve. There's a difference between independence and conflicts of interest. Conflicts of interest are about... No, but I don't mean to... The ethics rule says... Now, by the way, you and I are now arguing about... We've moved on to accepting... Maybe you haven't done this. Accepting the idea that the GSA regulation does apply a standard. It does include a standard. Not for this case. Okay, but it says can create the appearance or reality to independently and objectively serve. That's what it says, right? Independently serve. Independently and objectively serve, yes. Well, the ethics regulations that have been issued pursuant to this say scientists with EPA grants can independently serve, so long as they don't make any decisions regarding their individual grant. No, what those say is that there's no conflict of interest. One of the documents that my opposing colleague relies on as well is an EPA OIG report from 2013 that specifically distinguishes between independence from the agency and conflicts of interest. Conflicts of interest generally are about people's outside financial holdings, spousal employment, things that might skew them based on their outside activities in the world. And we're all walking, talking conflicts of interest here. I have a spouse. He has employment. I have financial holdings. Ethics rule doesn't say no one can serve on a committee. It just says once you serve, you have to recuse from things that you have conflicts on. Okay, okay. Independence is... Can you just look at the language here we're looking at? Yes. People who have grants, quote, can create the appearance and reality of potential interference with their ability to independently serve. Isn't that all about whether the grant from EPA affects their ability to independently serve? Yes, but again, independence is different than conflict of interest. Explain that to me. That I may understand. So as plaintiffs have taken pains to emphasize, this case is about scientific peer review committees, right? They exist. EPA has put together a scientific proposal, like we're going to lower the standard for carbon monoxide in the air from nine parts per million over an eight-hour period to some lower figure. And they submit this to an outside independent body to review the science and see whether they've done a good job or not. And so EPA's interest is in having a body that is perceived as independent from the agency to provide a check on that. And then that's of use to the agency, where if the regulation is challenged down the road and litigation, EPA can say, look, these outside people who we normally have no dealings with have looked at the science and said it's A-OK. Just taking a step back, generally, that's what peer review is about, right? In the academic context, the fact that someone doesn't have a financial conflict of interest doesn't mean that you should peer review if you sit next door to the person and hang out in the cafeteria with them. You want someone independent to provide that. But I still don't understand the difference between – suppose we have two different scientists from the same university. One has an EPA grant and the other doesn't, right? The one without it can serve, correct? That's right. But the one with it can't. Under this particular policy. Isn't the concern about independence directly related to the grant? And that issue is what's dealt with in the ethics rules. The ethics rules say people with grants can serve so long as they recuse themselves. So I still do not understand how independence is different from the conflict of interest. A single fact in the world can be relevant to two different legal inquiries. There's a conflict of interest inquiry, which is enforced through criminal sanctions if it's a statutory violation or civil penalties. And there's administrative remedies for violations of Part 2635. But what I'm asking Your Honor to do is deposit for a moment that there's a part of the world to which federal ethics rules apply, and it is to employees who have entered federal service. And then there's a separate set of legal rules that apply to the decisions that agencies can make and about how to staff their committees. Obviously, they can't do anything unconstitutional. There are rules about nepotism and so forth. We're talking about a different set of rules that apply to who an agency can appoint to its committee. And the agency here is focused on staffing a body that is, by design, the very purpose of it is to be independent. And we can argue, we can have policy disagreements about whether this is a good or bad policy, but it's not a federal ethics rule. So it doesn't matter what the ethics rule says about whether I, as a scientist at an academic institution, hold an EPA grant? Well, I mean, the agency is bound by federal ethics rules. It absolutely matters. It can't allow someone to participate in a particular matter on an advisory committee if that person has a conflict of interest. But EPA's choice of whether they want only people with the highest degree in their field or only people who have published research recently or only people who can commit to four years of service or only people who aren't currently in a financial relationship with the agency, all of those things are not federal ethics concerns. I think you can say that, and we're just having trouble. The table uses the word translating. And to be fair, I think the district court had some trouble, too, because the district court said, although it ruled in our favor, look, I think that the federal ethics laws provide a floor but not a ceiling here. The federal ethics laws don't even really provide a floor here. They don't speak to who the agency can choose to serve on its committees. There's a different body of law that deals with that. But all I'm getting at is as a general matter, a person, the president, for example, can pick who he wants to have serve in his cabinet. But there may be certain laws on the book that say you cannot appoint a person who has previously been convicted of two felonies involving criminal sentences of more than five years. All right? So it really doesn't matter. That person is just not in the eligible category, no matter what the president wants to do. All right? There's a law that says that person, Congress has decided, is just not a suitable person. All right. So if we had a statute here where Congress had said an EPA may not consider a receipt of an EPA grant in deciding who to put on the committee, then there would be a violation of that statute. As it happens, the EPA directive here was a response to a very different kind of legislative initiative, which was going to ban the agency from allowing anyone to serve if they had received an EPA grant currently or any time in the past three years. And FACA is principally, the staffing of advisory committees under FACA is principally a matter for congressional oversight. And EPA quite reasonably might have thought, rather than have my hands tied by statute by something that's going to be much more draconian, not allow any scientist to serve if they've had an EPA grant in the past three years, I'm going to, as a matter of policy, adopt this in this policy statement here. I just want to go back to something you said in response to both Judge Rogers and my question. You said, correct me if I'm wrong, that the ethics standards issued by the Office of Government don't deal with this issue. Is that what you said? That's right. Can I finish my question? Yes. So under the existing Office of Governmental Ethics, individuals who have EPA, those regulations express the state that individuals with grants from the agency can serve on advisory committees. Correct? The ethics rules state that it's not a conflict of interest. Is that true? That's what they say. They say special employees can serve if they have grants. They can serve with their grants as long as they don't participate in decisions having to do with their grant. I don't think the regulations speak precisely to grants, Your Honor. If you want to be specific about the text, we can flip to 2640-203-G, which I believe is the exception for special government employees. A special government employee serving on an advisory committee within the meaning of FACA may participate in any particular matter of general applicability where the disqualifying financial interest arises from his non-federal employment, provided that the matter will not have a special or distinct effect on the employee or employer. What is the matter? The matter is the grant. That's what they're talking about. They're talking about the grant. So I just, you know, I've read all your arguments. It's just sort of astounding to me that you're telling me. I get your argument that the agency can change it. I get your argument about the process. But what I don't get is this argument that the ethics rules don't cover this subject. They don't. In fact, as I've been trying to point out to you, sorry, as I wasn't able to say before, if the agency had gone to OGE here and said, we want to promulgate a supplemental regulation about this, it's quite, you know, my understanding is that OGE would have said, this is not covered by Part 2635. This is about who you're appointing in the first place to your committee. And also it's important to note, conflict of interest rules don't say you can or can't serve on a committee. They say particular matter, as a general matter, a conflict of interest is not a reason why you would eject someone from federal service. It is a reason why you would recuse them off a particular matter. And we're here talking about what are the qualifications or considerations that the agency is going to consider in putting together an independent committee. And, again, we can, you know, people can reasonably fight. And plaintiffs, you know, have a reasonable argument that this isn't the best policy and different administrations have taken different course. But that's a matter for policy debate and not a matter for judicial review. Let me ask you a different question. Just assume for a minute, this is hypothetical, that I don't agree with you, that I think that this directive actually changes existing ethics standards. Let's just assume that that's what I think, okay? Under Supreme Court and our precedent, when an agency changes its policy like that, it has to acknowledge the change and it has to explain why it's changing it. So when I read this directive, where do I find that in there? Now, again, this is hypothetical, okay? This assumes that the ethical, that the regulations issued by the Office of Governmental Ethics deal with this issue and that this is different. So where would I find that? The directive is not a regulation that – let me put it this way. The very fact that this document was issued – this is a gratuitous document. Agencies don't have to publish policy statements about who they appoint to their committees. They usually don't. Other agencies might very well have this same policy. I don't know. They don't issue – agencies just pick people for committees. They don't normally make a fuss about it. The very fact that they made this announcement here shows that they were acknowledging a change from what they had done before. And so how do you distinguish that from CBS versus FCC, which the plaintiffs cite in their brief? Right. So that's – I think that really illustrates, like, how far afield they are from what this case is because that was an adjudication of confidential – of an antitrust inquiry in which an agency was going to release confidential business information within five days, basically setting up a situation where they had to go running for mandamus, I think, to this court. And the agency didn't acknowledge that they had previously had a policy of protecting that information up through judicial review. So we're talking there about primary conduct, facts in the world, rights of private parties, and the agency was issuing – it wasn't speaking because it was changing its mind. It was speaking because it was adjudicating. Wait, wait, wait. We said the agency there did acknowledge – I'm quoting – did acknowledge that it was breaking from precedent. That is, the Bureau acknowledges departure by departing. Well, the argument there was that because the agency said not X rather than X, the agency had acknowledged what it was doing. The agency didn't say, you know, this is a change from before. And what I'm telling you is this policy statement, the very fact of its issuance, as Judge Ginsburg was pointing out before, is this is different than before. That is why the agency is speaking. And so – all right. So the first part of your answer is, to make sure I understand it, is that, of course, they've acknowledged it by issuing the directive. That's number one, right? That's right. And number two, again, sticking with my hypothetical, where would I find in here an explanation for why people who could serve on advisory committees the day before this was issued now no longer can? The explanation that was provided is in the memorandum attached to the directive. I agree with you that it is – or I acknowledge that it is succinct, but what I think is important to note is that agencies don't have – by statute, they don't have any obligation to set forth the reasons for – what policies they have for appointing people to advisory committees or what the reasons for those policies are. This is all gratuitous. You're drifting from my hypothetical, which is it's all based on assumption, which I concede you don't agree with, but that's why I call it a hypothetical, that the agency is bound by the Office of Government Ethics regulations until it changes. That's my question. And I suppose I'm struggling because I just think that is a fairly fundamental problem in looking at this case. So you don't want to – but you would – I take it then your answer, and I'm a perfectly fine answer, which is, look, I don't have to answer that question because there's no obligation – there's no binding preexisting obligation that the agency has to explain its departure from. That's a perfectly acceptable – if that's your answer, you should just say that's what it is. I think that's right. I think because this is not an ethics rule and plaintiffs are then saying – I understand plaintiffs to be saying, even if it's not an ethics rule, I still think they have to explain themselves. But you understand that with that answer, if – I can only speak for myself, but if I happen to disagree with you about the premise of the question, then you lose, right? Well, I don't – I can't point you to a detailed – if what you're looking for is something that would appear in the preamble of a final rule regulating primary conduct, I can't point you to anything in the record like that. How about sentence? How about one sentence? Just give me a sentence or part of a sentence that explains the difference. One word. What the record reflects is that there had been significant legislative attention to EPA staffing of its committees. A bill had passed the House in two successive Congresses. Administrator Pruitt, in announcing this policy, thanked Congress for its leadership on this issue and said it was adopting this policy responsive to those concerns. The policy that was adopted was as a matter of agency discretion and was more limited than what Congress would have forced by statute. So you don't accept the proposition then that there are a lot of things agencies don't have to do. But once they voluntarily decide to put on the record that they want to do something, then they assume an obligation to explain why. I mean, if it just said we don't want any redheads on our committees, yeah. Judge Rogers, I agree with you to the extent that they choose to speak and they say something that is unconstitutional or so irrational that it... Or contrary to an outstanding... Or contrary to statute, and I would submit that we're in none of those situations, and instead what plaintiffs are saying is I would like... No, but if you want to talk standard in terms of statute, and I'm saying there is a standard in that although I hold a grant from EPA, I am not in any way bound to be disqualified, as I would be, say, if I had two felony convictions in my early life. I think the problem with saying once an agency chooses to speak, it has to anticipate every possible objection and explain why... Not every possible, but, you know, why? The problem... This document didn't need to be issued at all. I'm thinking... If courts are going to hold the agency in issuing an internal policy statement like this to the standards that apply to a final rule issued through rulemaking, the result is going to be agencies aren't going to be transparent, right? Like what... This is a public good that the agency is providing by saying what its policies are. Again, you can disagree about whether it's a good policy or a bad policy, but they're at least telling you what they're doing. And if the court is going to say that EPA standards apply the same way to this kind of document as to a final rule, it would really create some perverse incentives. And this court has anticipated that in a decision from the late 80s. There's an NTEU v. Horner, an opinion written for the court by Judge Ginsburg. The court said, look, even when something's not committed to agency discretion by law, which we're not conceding here, but even if it's not committed to agency discretion, the scope of review still has to be tailored to the issues involved in the case. And all of the cases my opposing colleague cites are adjudications or rulemakings of primary conduct in the world. And this is a policy statement about how the agency is choosing its own advisors who serve at will at the pleasure of the appointing authority. And so there's simply no requirement for the agency to speak in fuller detail than they did here. All that said, you started to, I thought, suggest that there was something in the memorandum to explain the reason for the action. Well, yes, Your Honor. The language is what Judge Tatel and I were discussing before. It states, a vital part of ensuring integrity and confidence in EPA's facts comes from guaranteeing that fact members remain independent of the agency during their service. One of the committees that issue here, CASAC, it's actually a statutory requirement that the committee be independent, using that word. EPA fact members should avoid financial entanglements with EPA to the greatest extent possible. Non-governmental and non-tribal members in direct receipt of EPA grants while serving on an EPA fact can create the appearance or reality of potential interference with their ability to independently and objectively serve as a fact member. Fact members should be motivated by service and committed to providing informed and independent expertise and judgment. I would just note that nothing I just said mentions conflicts of interest at all. The next paragraph goes on to say this is in addition to policies about conflicts of interest. But this policy stands separate and apart from that. Let's go back to something earlier on. Where does it appear, the statement that no rights or benefits are being created in some program? So that goes to the plaintiff's procedural challenge. And that language appears in 5 CFR 2635-106C. I think I've gotten that right. Okay, but what is that? Where did it come from? So the OGE promulgated regulations. There's a statute, 2635. So this is something implementing that statute. It's a regulation, right? Not exactly. It might take a minute or two, but I think I can get this out in a way that's responsive. So first there was an executive order that said we need to have uniform standards of ethical conduct. There's also the Ethics in Government Act that provides rulemaking authority to OGE. OGE, acting mostly at the direction of the executive order, said we're going to have uniform rules, and then we're going to set up a supplemental agency regulation process. Because we recognize, you know, for example, that EPA, people who work in the pesticides office, probably shouldn't hold stock in pesticides companies. That's one of EPA's supplemental agency regulations, for example. But what OGE said in this regulation is this is an internal housekeeping matter. Nothing in here is intended to create an enforceable right. Just as when my supervisor to my left issues me a directive to do something, if you happen to publish it in the Federal Register, it's not as though someone could sue over that. What OGE was trying to say is this is a housekeeping matter. It doesn't create any rights. I think my opposing colleague is wrong to frame this as about a preclusion of judicial review. It's totally. So does it appear in the executive order first? It appears in the executive order first, and then it's also in the regulation. And then in an OGE release of some sort. Right. But there's no statutory requirement for a supplemental agency regulation process to exist or that an agency use it under any particular circumstance. So I would agree with my opposing colleague if there was a statute that said people, you know, there should be a supplemental agency regulation process and people are allowed to sue over it, an agency couldn't then promulgate a regulation saying this doesn't create any rights, you know, procedural or substantive. But here everything is a creature of the agency's own housekeeping statute. And so it's not a preclusion of judicial review case. It's a is there some right that exists at all in the world. Well, what do you think about the question I asked your counsel for the plaintiffs here? That my question was rights or benefits substantive procedural. They're not suing for to get their seats back here. This is an APA challenge. And so isn't that not even covered by this language? Well, nothing in this. First of all, I think there's another question about whether an agency even can state in a regulation that it can't be challenged under the Administrative Procedures Act, which is what you're saying. But setting that aside, isn't this focused on a different problem? They they don't want they don't want individuals to be suing over serving or not serving on advisory committees. I think the way that that this language appears in lots of different regulations. This isn't the only one. It appears in lots of executive orders. And the intent of that isn't about executive. It's about saying this is free rights. Executive orders are different from regulations. This also appears in many regulations. Can you give me an example? Agency to regulations usually say that they're the rules about how requests for an agency official to turn over documents or testify in court are teed up within the agency for resolution. If those internal regulations about how those questions are teed up are not obeyed, it's not something that someone can sue in court for. What about regulations that affect, that go beyond internal procedures but affect parties outside the agency? Well, I don't think this is outside the agency. Remember here we're talking about advisers to the agency. This is this is not a regulation of someone's primary conduct. I understand that the individual scientists who have served and provided great benefit to the agency are not, you know, full-time EPA employee wearing hats. But we're talking here about the agency's own advisers. The language says no rights or benefits enforceable at law by any person. The prayer and the complaint here just seeks to vacate something under the Administrative Procedures Act. It's not enforcing anything against the United States. It's not like it's seeking a remedy. I think to the extent the plaintiff's complaint is saying you should vacate this under the APA because it's contrary to law, because you are required by the Supplemental Agency Regulation to go through this supplemental process with OGE and you didn't do that here, and so therefore it's contrary to law, that is enforcing Part 2635. And it doesn't matter whether they're suing over their particular seat or not. What matters is that they're saying the agency has acted contrary to Part 2635, and therefore the agency's action should be vacated. And that's what 2635.106c is trying to address. It's in a regulation because OGE wants it to be easy for agencies to find this process and to use it. But it includes this language, as the executive order itself had done, because this is a housekeeping matter. It's not intended to regulate people outside the government. All right. Anything further? All right. Thank you very much. If there are no further questions, we ask that the judgment be affirmed. Thank you very much. All right. Counsel for appellants. So I'd like to begin with just a couple of citations for the court and then make a few quick points. First, the peer review handbook is at JA208, Judge Ginsburg. And I also wanted to refer you, Judge Tatel, to paragraph 65 of our complaint, where we do allege that many grant recipients will be disqualified by the directive. I wanted to emphasize that the colloquy about what the ethics laws prohibit and whether EPA has authority to adopt different ethics rules and to address independence or conflicts of interest in this way underscores that there clearly is law to apply here. This court can do a side-by-side comparison of the OGE regulations and the GSA regulations that bind EPA on the one hand and the directive on the other and determine whether they're consistent as they are required to be under the OGE regulations. And that's section 2638602 that requires that agency regulations be consistent with OGE's regulations. I also wanted to point out that contrary to my opposing counsel's statement, the ethics rules clearly do apply to appointments. And this is confirmed by the GSA regulations, because the GSA regulations direct EPA to apply the ethics rules in making appointments to their committees. And I would direct the court to page 73 of our addendum, where the GSA regulations say, the agency's designated ethics official should be consulted prior to appointing members to an advisory committee in order to apply federal ethics rules properly. Mr. Gromlich, I'm not sure that you covered this earlier on, but now we've heard squarely from Mr. Sandberg the claim that this isn't an ethics regulation to begin with. The peer review handbook says, you know, conflict of interest concerns are very limited when someone is a grantee, but not passing upon related grants. And that's right. So that's very explicitly couched in terms of conflict of interest. That's at 208. So then the government comes in and says, look, this isn't a conflict of interest concern. The memorandum makes it clear that they talk about independence. They never mention conflict of interest. So how do you respond to that? If it's really not a conflict of interest concern, then it really doesn't relate to OGE at all. Well, the question is whether it's an ethics concern, and a conflict of interest concern would qualify. And I want to point out that in EPA's brief, EPA concedes that this directive is motivated by conflict of interest concerns, and that is to date the only rationale that EPA has given on that. Yes. We point out in our reply that EPA made that concession. It's towards the end of EPA's brief, Judge Ginsburg, and we cite to the page in EPA's brief where they concede that this was motivated by conflict of interest concerns in our reply. What page is that? On page 47 of EPA's brief, they say that Congress itself found the funding relationships to raise potential conflict of interest concerns, and I don't have the page, but EPA says close to there that it was not arbitrary and capricious to act on the concerns raised by Congress. So EPA concedes that it acted on the conflict of interest concerns raised by Congress. Yeah, so it says Congress found the funding relationships between EPA and advisory committee members raised potential CO conflict of interest concerns. The official explanatory statement accompanying some appropriations act is that, quote, the agency has not yet resolved longstanding questions regarding conflict of interest among advisory committee members that have spanned multiple administrations. And I think you're right that implicitly it looks like a concession. I'm trying to put it in context here to make sure I understand the context. Yeah, well, Judge Ginsburg, there's another page where EPA says that they acted, that they acted on these concerns raised by Congress, and uses that as a defense. And I can't find it right now, but we could submit a supplemental letter. Let's go to the next paragraph, I guess. Ultimately, plaintiff's real grievance lies not so much in the nature of EPA's explanation, but rather in the fact that the directive does not strike plaintiff's preferred balance between assuring committee independence and maximizing the number of qualified experts able to serve. There's another more direct statement in EPA's brief, but I can't find it right now. I wanted to address EPA's claim that the ethics rules don't address grants, as my opposing counsel just said, and I'd like to direct the court to the page 61 of the addendum of our brief, which is the OGE regulation that EPA, the counsel for EPA discussed. But I would like to direct the court to paragraph G and the examples under paragraph G, because it's the examples that really make crystal clear that when OGE determined that advisory committee member financial interests did not create conflicts of interest, they were including agency grants within that. Example two addresses a situation where the National Cancer Institute has established an advisory committee to evaluate a university's performance of an NCI grant. And it makes crystal clear that the same standards apply to grants when they're evaluated by advisory committee members, and determines that the situation presented here is not a conflict of interest. And ultimately it's a distinction without a difference when EPA says that, well, this directive is about independence, it's about the integrity of the committees. Those are all issues within the ethics that come within the ethics rules. At bottom, that's a disagreement with OGE about whether these grants create a conflict of interest. Mr. Brunman, if the administrator didn't terminate anybody's appointment, but as vacancies came up, never filled any with people who have grants, so it becomes apparent after a while that that's what's happening, that he's just refusing to put any grantees on committees. Maybe because of some experience elsewhere, not in government or what have you, earlier on in life where he comes to think that's a bad idea. Is he violating anything? Well, there certainly would be very difficult issues of proof in your hypothetical. Yeah, that's right, I just think it's a bad idea. In your hypothetical, is the administrator acting solely on the basis that these grants pose an ethical problem? Maybe he's not so clear that it's an ethical problem. He just doesn't want people who have a vested interest in EPAs making more grants. Well, I think that there would be difficult issues of proof, and it would be a closer question whether that action or failure to act would be reviewable or committed to discretion. But here, where we have the administrator not just making clear his rationale, but also adopting an across-the-board policy, as this Court's decision in the National Treasury Union employee's case, which you wrote, Judge Ginsburg, makes clear, even if challenges to individual appointment decisions might be committed to discretion, a change to the rules that govern, in that case the civil service, is not committed to discretion and is reviewable. And that's more like the situation we have here. I'd like to finish by addressing the arbitrary and capricious issue. And I'd like to emphasize that if you read this directive, EPA gives reasons for the new policy, and it states the new policy, but there's no indication that EPA's prior policy took the opposite position, and there's no acknowledgment of that conflict. And that's what this Court's cases require. And relatedly, there's no recognition... It doesn't acknowledge the change, and it doesn't acknowledge the conflict with the prior policy, Judge Ginsburg. And relatedly, there's no indication in this directive that the expert agency in matters of ethics has taken the opposite position as to whether there's an ethics problem here, that the expert agency in matters of ethics has decided that these grantees should be permitted to serve. So even if EPA were not directly bound by the OGE regulations, which, in fact, EPA was bound to apply the OGE regulations in the appointment process, but even if EPA wasn't, it would be arbitrary for EPA to fail to even consider that judgment of the expert agency, as EPA failed to do here. If there are no further questions, I would ask the Court to reverse the judgment of the District Court and remand with instructions to vacate and grant other appropriate relief.
judges: Rogers, Tatel, Ginsburg